## Case No. 9,720.
### The MONTE CHRISTO.

[6 Ben. 327; 17 Int. Rev. Rec. 31.] [1]

District Court, E. D. New York.  Jan. 1873.

SHIPPING—PUBLIC REGULATIONS—DISTRIBUTION OF INFORMER'S SHARE—FRAUDULENT REGISTER.

1. The act of July 18, 1866 (14 Stat. 184), is not an act relating to the customs, within the meaning of the act of March 2, 1867 (Id. 546).

2. The proceeds of a forfeiture under that act are to be paid directly by the court, one-half to the collector of the port, for the use of the United States, one-fourth to the informer, if any, and one-twelfth each to the collector, surveyor and naval officer.

In admiralty.

BENEDICT, District Judge. The question here presented by the district attorney does not appear to have ever arisen in any reported case, nor can I ascertain that it has ever been brought under consideration in the practice of any of the departments of the government.

It arises as follows: The brig Monte Christo has been condemned by this court as forfeited to the United States, under the 24th section of the act of July 18, 1866 (14 Stat. 184), which provides: "And be it further enacted, that if any certificate of registry, enrolment, or license, or other record or document granted in lieu thereof to any vessel, shall be knowingly and fraudulently obtained or used for any vessel not entitled to the benefit thereof, such vessel, with her tackle, apparel and furniture, shall be liable to forfeiture." [Case No. 9,719.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

The proceeds of this forfeiture being in the registry of the court, an informer made claim to be entitled to the informer's share, namely, one-fourth of the proceeds. No question was made as to the right of an informer to this portion, and it has been determined that the person claiming is, in fact, the informer. Whereupon I am required to determine whether the various parties entitled to share in these proceeds can lawfully receive payment of their share directly from the registry of the court. Former decisions have left this question one of procedure merely. U. S. v. George [Id. 15,197]. By whomsoever the fund is distributed, the portions are to be the same, and the same parties are entitled thereto.

It is first to be considered whether the act of March 2, 1867 (14 Stat. 546), is applicable here; for if so, these proceeds. after deducting the charges and expenses, must be transferred to the treasury of the United States, to be thereafter distributed by the secretary of the treasury, in accordance with the order of distribution. The act of March 2, 1867, is confined, by its terms, to proceeds of forfeitures incurred under "the provisions of the laws relating to the customs," and it can have no application here, unless the 24th section of the act of July 18, 1866, be regarded as a provision of law relating to the customs. I do not see that the section should be so regarded. It relates solely to the use of fraudulent certificates of registry, enrolment, or license of ships and vessels, and would naturally be described as a provision of law relating to the registry or enrolment of ships and vessels, which is a well known class of statutes, in some instances certainly, treated as distinct from the laws relating to the customs. As, for instance, in the 11th section of the very act under which this forfeiture has been incurred, where the phraseology is, "acts relating to the customs, or the registry, enrolling or licensing of vessels." This distinction may well be supposed to have been in view in drafting the act of 1867; and, in the absence of any reason for including the 24th section of the act of July 18, 1866, within the description of laws to which the act of 1867 is applicable by its terms, I conclude that the proceeds of a forfeiture incurred under section 24 of the act of 1866 are not within the scope of that act. We turn then, and naturally, to the provisions in section 31 of the act of July 18, 1866, under which act this forfeiture was incurred, where it is provided that all forfeitures by virtue of that act shall be disposed of and applied "as provided in section 91 of the act of March 2, 1799 [1 Stat. 697]." This section 91 provides for the shares into which forfeitures are to be divided, and declares the parties entitled thereto, according to which one moiety is to be received by the collector, for the use of the United States, and the other half is to be divided between, and paid in equal portions to, the collector, naval officer and surveyor, unless there be an informer, in which case

one-half the latter moiety must be given to such informer. That the collector is to receive the moiety going to the United States, is indicated by the words of the section, and a payment to the collector, to the naval officer, and to the surveyor of their respective shares is mentioned; but no provision is made for any payment into the treasury, nor for any payment of the fund in gross to the collector.

The words of the section, taken apart from any other section, afford no authority for a payment of the fund to the collector or into the treasury; and, that such a payment was not contemplated by the act, is indicated by the fact that, while section 90 of the act of 1799 does provide for a payment of the fund in gross, less costs and charges, to the collector, all reference to that section is omitted in the 31st section of the act of 1866, and only section 91 mentioned; which section, while it fixes the shares, does not, as has been said, authorize any payment thereof to any but the parties entitled thereto, save only that one moiety is to be received by the collector for the use of the United States.

I arrive at the conclusion that the parties are entitled to payment directly from the registry of the court, the more readily, because no reason has been suggested for sending the fund through the hands of various officers, none of whom, under the law, have any discretion as to its application, or derive any advantage from its disbursement. No duties or other charges are to be deducted from it, and nothing whatever, that I can imagine, would be gained from a different construction of the law, while much unnecessary delay and labor would be caused thereby to all the parties entitled to the fund.

My determination, therefore, is that no statute authorizes a payment of this fund otherwise than to the parties entitled thereto by law, and that the only lawful disposition of the fund which can be made by the court is to pay one moiety to the collector of the port, for the use of the United States, one-fourth to the informer, and one-twelfth to the collector, for his own use, one-twelfth to the surveyor, and one-twelfth to the naval officer.